```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
O.K. Petroleum Distribution Corp. et al,:

                  Plaintiffs,         :    09 Civ. 10273 (LMM)

              - v -                   :    MEMORANDUM AND ORDER

Travelers Indemnity Company et al,    :

                  Defendants.         :
- - - - - - - - - - - - - - - - - - - -x
```

McKENNA, D.J.

Plaintiffs O.K. Petroleum Distribution Corp. and O.K. Petroleum International, Ltd. (collectively, "Plaintiffs") commenced this action against defendants Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company), United States Fidelity & Guaranty Company, and Gulf Insurance Company (collectively, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, deceptive business practices in violation of New York General Business Law section 349, and a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. (Compl. ¶ 2.)

Plaintiffs purchased multi-peril insurance policies, including Commercial General Liability ("CGL") and Commercial Automobile Liability ("CAL") policies, from Defendants or their

predecessors covering periods from 1989 to 2002. (Compl. Prelim. Statement 1.) Plaintiffs also purchased umbrella coverage for their CGL policies. (Id.) In or about May 2008, Plaintiffs were named as defendants in products liability litigation involving alleged product defects of gasoline containing Methyl Tertiary Butyl Ether ("MTBE"). (Compl. ¶ 25.) Plaintiffs allege that, despite giving Defendants notice of all MTBE-related lawsuits where Plaintiffs were named as defendants, Defendants disclaimed all defense obligations under the CGL and umbrella policies. (Id. ¶¶ 3, 5.) Defendants agreed to provide a percentage of total defense costs under the CAL policies (id. ¶ 5), however. Plaintiffs allege that Defendants were obligated to pay the total defense costs, not a percentage thereof, under the CAL policies (see id. ¶ 6).

    Defendants move to dismiss Plaintiffs' second and third causes of action, breach of the implied covenant of good faith and fair dealing, and deceptive business practices in violation of New York General Business Law section 349, respectively. Defendants motion is pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

    For the reasons set forth below, Defendants motion to dismiss Plaintiffs second and third causes of action is GRANTED.

## I.   BACKGROUND[1]

**A.   The Parties**

**1. Plaintiffs**

Plaintiffs O.K. Petroleum Distribution Corp. and O.K. Petroleum International, Ltd. are corporations organized and existing under the laws of New York, with their principal places of business in West Babylon, New York. (Compl. ¶¶ 11-12.) The companies are family-owned, and are engaged in the regional distribution of gasoline and fuel oil. (Id. ¶ 13.)

**2. Defendants**

Defendants Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company), United States Fidelity & Guaranty Company, and Gulf Insurance Company are all indirectly wholly-owned subsidiaries of The Travelers Companies, Inc., a publicly traded company. (Fed. R. Civ. P. 7.1 Corp. Disclosure Statements.) Defendants maintain their principal places of business in Hartford, Connecticut (Compl. ¶¶ 14-16), and conduct business in the Southern District of New York (id. ¶ 18).

---

[1] The factual allegations are detailed in the Complaint, familiarity with which is presumed. For purposes of this motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. See In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (citing Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001)).

**B. Factual Background**

    **1. The Insurance Policies and the Underlying Litigation**

From 1989 through 2002, Plaintiffs were issued multi-peril (CGL), automobile (CAL) and umbrella policies by Defendants or their predecessors. (Compl. ¶ 19.) Plaintiffs have paid premiums and complied with all applicable conditions relating to these policies. (Id. ¶ 20.) The policies do not contain any language which would allow Defendants to shift defense costs to the policyholder (id. ¶ 21), nor do they qualify Defendants' obligations to defend Plaintiffs and pay their defense costs and fees (id. ¶ 22).

In or about May 2008, Plaintiffs were named as defendants in a multi-district products liability suit regarding the alleged product defects of gasoline containing MTBE. (Id. ¶ 24.) Plaintiffs have been served with multiple MTBE-related actions and have given Defendants timely notice of these actions. (Id. ¶¶ 25-35.)

Defendants first received notice of a claim relating to the MTBE products liability litigation from Plaintiffs on or about June 18, 2008. (Compl. ¶ 44.) From April through July 2009, Defendants acknowledged their duty to defend Plaintiffs under the CAL policies. (Id. ¶¶ 45-47.) Yet, Plaintiffs allege that Defendants have stated they will only pay between 11 and 13 percent of total defense costs for Plaintiffs. (Id. ¶ 56.)

4

Plaintiffs allege that this unilateral modification and refusal to pay the full cost of defense constitutes bad faith and is a breach of the insurance contracts between the parties. (Id. ¶ 74.)

As for the CGL and umbrella policies, Defendants denied having any defense and indemnification obligations for all MTBE-related claims. (Id. ¶¶ 81-82.) Defendants have disclaimed coverage on the basis of the Pollution Exclusion in the policies. (Id. ¶ 84.) Plaintiffs contend that they are covered by the policies' Products-Completed Operations Hazard provision, which is not affected by the Pollution Exclusion. (Compl. ¶ 85.) Plaintiffs assert that Defendants' "reliance on the Pollution Exclusion as a basis for denial of defense is unreasonable and not supported by the language of the . . . [p]olicies." (Id. ¶ 97.)

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendants acted in bad faith by failing, or refusing, to pay Plaintiff's legal fees and by not providing a legal defense for Plaintiffs' MTBE products liability claims. (Compl. ¶¶ 120-121.) In addition, Plaintiffs allege that Defendants acted in bad faith by ignoring pertinent provisions of the policies, inadequately investigating claims and requests for defense coverage, violating applicable

5

insurance laws and regulations, committing unfair and deceptive acts and practices in handling the MTBE-related claims, compelling Plaintiffs to litigate this action against Defendants, making use of funds which should have been paid to Plaintiffs, ignoring proper claims-handling procedures, and by not reviewing the notice of claims submitted by Plaintiffs for nearly one year. (Id. ¶ 122(a)-(h).)

### 3. Deceptive Business Practices under N.Y. Gen. Bus. Law Section 349

Plaintiffs allege that "[Defendants] materially misled and deceived [Plaintiffs] -- as well as CAL, CGL and Umbrella insurance purchasing consumers at large -- into believing that as a CGL policyholder, insurance defense costs and fees would be fully reimbursed by [Defendants]." (Compl. ¶ 136.) Furthermore, Plaintiffs contend that "[Defendants] ha[ve] adopted a practice and policy, aimed at consumers of [their] insurance policies, including [Plaintiffs], to refuse to reimburse broad categories of defense costs and fees or to deny defense and indemnification coverage entirely." (Id. ¶ 137.) Plaintiffs also allege that Defendants engaged in deceptive business practices by unilaterally imposing new contract conditions under the CAL policies, whereby Defendants would only pay a fraction of defense fees and costs. (Id. ¶ 138.) Plaintiffs contend that

these are deceptive business practices in "violation of New York's General Business Law § 349." (Id. ¶ 142.)

## II. DISCUSSION

### A. Standard of Review

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a complaint in light of a motion to dismiss, "the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (citing Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001)). However, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d. Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

#### 1. The Bad Faith Claim is Not Duplicative of the Breach of Contract Claim

Under New York law, "implicit in contracts of insurance is a covenant of good faith and fair dealing." Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 194 (2008)

(citing N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318 (1995)). However, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Where a claim for bad faith is duplicative of a breach of contract claim, it is properly dismissed. See Texas Liquids Holdings, LLC v. Key Bank Nat'l Assoc., No. 05 Civ. 5070, 2007 WL 950136, at *2 (S.D.N.Y. March 27, 2007).

As the parties' briefs show, case law is divided as to whether a breach of the implied covenant of good faith is, in itself, always duplicative of a breach of contract claim. (Compare Pls.' Mem. in Opp'n 6-9 with Defs.' Mem. 6-10 and Defs.' Reply Mem. 3-13.) The cases cited by Plaintiffs which allowed for both claims were in the first-party insurance context, and here, Plaintiffs are making a third-party insurance claim. (Defs.' Reply Mem. 8-13.) However, Defendants' argue that the claim is duplicative, relying on cases involving claims for the tort of bad faith, not bad faith in contract. (Pls.' Mem. in Opp'n 14.) Ultimately, the issue is whether "the [alleged] wrongful conduct was 'also the predicate for a claim for breach of covenant of an express provision of the underlying contract.'" Haym Salomon Home for Aged, LLC v. HSB Group, Inc.,

8

No. 06 Civ. 3266, 2010 WL 301991, at *6 (E.D.N.Y. Jan. 20, 2010) (citation omitted). Therefore, all allegations made by Plaintiffs relating to the underlying denial of coverage are duplicative.

Here, Plaintiffs allege more than just denial of coverage by Defendants. Plaintiffs allege Defendants inadequately investigated Plaintiff's claim, violated applicable insurance regulations, and inordinately delayed in reviewing Plaintiffs' claim. (Compl. ¶ 122.) Accordingly, the Complaint need not be dismissed as a matter of law. However, the question remains whether Plaintiffs' claim meets the standard for pleading bad faith.

### 2. The Standard for Pleading Bad Faith in Contract

Plaintiff is alleging bad faith as a contract claim, not a tort claim.[2] (Pls.' Mem. in Opp'n 14.) For this contract claim, Plaintiffs must allege "'more than an arguable difference of opinion between carrier and insured over coverage.'" Liberty Surplus Ins. Corp. v. Segal Co., 420 F.3d 65, 70 (2d Cir. 2005) (quoting Sukup v. State of N.Y., 19 N.Y.2d 519, 522 (1967)).

---

[2] The standard cited by Defendants relates to the tort of bad faith, which is not at issue. Defendants relied on Pavia, which discussed the duty of good faith and held that the standard for bad faith is a gross disregard of the insured's interests. Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 452-54 (1993) (emphasis added).

9

Plaintiffs must show "'such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.'" Id.

Plaintiffs allege that two of their other insurers, Starnet Insurance Company and Clarendon National Insurance Company, rendered timely defenses under CGL policies similar to those issued by Defendants and, therefore, Defendants' denial of coverage was unreasonable. (See Pls.' Mem. in Opp'n 10) (referencing Compl. ¶ 98).) However, Plaintiffs filed a similar suit before this very Court against Starnet just last year alleging the same claims in connection with the MTBE litigation. See O.K. Petroleum Distrib. Corp. v. Starnet Ins. Co., No. 09 Civ. 5094, 2009 WL 2432725 (S.D.N.Y. Aug. 5, 2009). Defendants also contend that the other insurer, Clarendon, issued an extensive reservation of rights letter to put Plaintiffs on notice of possible coverage issues. (Defs.' Reply Mem. 15 (discussing Defs.' Reply Mem. Decl., Ex. B, Letter of Nov. 6, 2009.))

These encounters with Plaintiffs' other insurers color this dispute as more of an "'arguable difference of opinion between carrier and insured over coverage' [than] a showing of 'such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it.'" Liberty Surplus Ins. Corp. v. Segal Co., 420 F.3d 65, 70 (2d Cir. 2005)

10

(quoting Sukup v. State of N.Y., 19 N.Y.2d 519, 522 (1967)). Although Plaintiffs' bad faith claim was not duplicative of its breach of contract claim, the standard for pleading bad faith has not been met; therefore, Plaintiffs' bad faith claim is dismissed.

**C.   Deceptive Business Practices**

N.Y. General Business Law ("GBL") section 349 makes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . . unlawful." N.Y. Gen. Bus. Law § 349(a) (McKinney's 2004). As a threshold requirement, claims made must concern conduct that is consumer oriented and directed at consumers at large. N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320 (1995); see also Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004).

Plaintiffs allege that "the sale of a standard form insurance policy constitutes consumer oriented conduct under [N.Y. GBL] § 349." (Compl. ¶ 130.) In support, Plaintiffs cite Riordan, which held that N.Y. GBL section 349 is "applicable to insurance companies' interactions with insureds." Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51-52 (2d Cir. 1992). Defendants contest Riordan's applicability as that case related to first-party insurance claims whereas this is a

11

third-party claim. However, Defendants have failed to show that the distinction between first and third-party claims is material, as the Second Circuit did not qualify their statement that, "[n]owhere does GBL § 349 provide an exception for insurance companies, nor does the Insurance Law exempt insurance companies from the reach of GBL § 349." Id. at 52.

Next, the deceptive conduct "must have a broad impact on consumers at large." N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320 (1995). A "[p]rivate contract dispute[] unique to the parties . . . would not fall within the ambit of the statute." DePasquale v. Allstate Ins. Co., 179 F. Supp. 2d 51, 61-62 (E.D.N.Y. 2002) (citations omitted), aff'd 50 Fed. Appx. 475 (2d Cir. 2002).

Plaintiffs allege that "the practices complained of are part of a systemic program aimed at the policyholders generally, having an impact on insurance consumers at large." (Pls.' Mem. in Opp'n 15.) However, Plaintiffs allege no facts to support this speculative argument. The fact that Plaintiffs possessed form policies does not lead to the conclusion that Defendants employed the alleged deceptive practices of "inordinate delays, unilateral[] changing [of] contract terms, and denial of benefits," (Pl.'s Mem. in Opp'n 16 (referencing Compl. ¶¶ 45, 122, 129-142)), to other insureds who possessed these form policies.

12

In order to survive this motion, Plaintiffs were required to plead facts showing that the deceptive conduct went beyond the contractual dispute between these parties, and they have failed to do so. Therefore, Plaintiffs' deceptive practices claim is dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' second and third causes of action is granted. Plaintiffs may make a motion to seek leave to replead within 45 days of the date of this Order, if they can allege facts to support their second and third causes of actions.

SO ORDERED.

Dated: July 15, 2010

                                            Lawrence M. McKenna
                                            U.S.D.J.